## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **MARK ALAN BURROUGHS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CIVIL ACTION** |
| **v.** | ) | |
| | ) | **No. 14-1300-JWL** |
| **CAROLYN W. COLVIN,** | ) | |
| **Acting Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Acting Commissioner of Social Security
(hereinafter Commissioner) denying Disability Insurance benefits (DIB) under sections
216(i) and 223 of the Social Security Act.  42 U.S.C. §§ 416(i) and 423 (hereinafter the
Act).  Finding error in the Administrative Law Judge's (ALJ) determination at step two
that the record evidence does not establish a medically determinable impairment (MDI),
the court ORDERS that the Commissioner's decision shall be REVERSED and that
judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g)
REMANDING the case for further proceedings consistent with this opinion.

## I.    Background

Plaintiff applied for both DIB and Supplemental Security Income (SSI) benefits,
alleging disability beginning May 15, 2004.  (R. 14, 136, 140).  Plaintiff's date last

insured (DLI) for DIB was June 30, 2010.  (R. 14).  Plaintiff was determined to be disabled because of post traumatic stress disorder (PTSD) as of the date of his initial application, November 22, 2011, and was apparently awarded SSI benefits.  (R. 63). With regard to Plaintiff's DIB application, at the initial review it was decided that there was insufficient evidence to determine the severity of his mental impairments as of his DLI, and he was found not disabled.  (R. 48-50).  On reconsideration, the finding of insufficient evidence was affirmed, and Plaintiff was again found not disabled.  (R. 72, 74).  Plaintiff exhausted proceedings with regard to his DIB application before the Commissioner, and now seeks judicial review of the final decision denying DIB.

Plaintiff argues that whether he is disabled is not an issue in this case because he was found disabled in proceedings on his SSI application.  He argues that the issue is the onset date of his disability, and he claims that the ALJ should have called on the services of a medical expert to assist him in inferring an onset date from the available evidence. (Pl. Brief 9-11).  Plaintiff also argues that the ALJ "erroneously concluded that [he] did not have a medical[ly] determinable impairment at step two of the sequential evaluation process."  Id. at 11, 11-15.  The court finds the second argument determinative here.

The court's review is guided by the Act.  Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009).  Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the

2

correct legal standard.  Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).  Substantial evidence is more than a scintilla, but it is less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency."  Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005).  Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion.  Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability.  20 C.F.R. §§ 404.1520, 416.920; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether he

has a severe impairment(s), and whether the severity of his impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Williams, 844 F.2d at 750-51. After step three, the Commissioner assesses claimant's residual functional capacity (RFC). 20 C.F.R. § 404.1520(e). This assessment is used at both step four and step five of the sequential evaluation process. Id.

The Commissioner then evaluates steps four and five--determining at step four whether, in light of the RFC assessed, claimant can perform his past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, claimant is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work. Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC assessed. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

The court finds that remand is necessary because the ALJ erroneously determined at step two of the process that the record evidence does not establish a medically determinable impairment.

## II.    The ALJ's Step Two Finding is Not Supported by the Record Evidence.

Plaintiff argues that the ALJ determined at step two that Plaintiff did not have a medically determinable impairment, and he claims that determination is erroneous. He

argues that Dr. Sharpnack reviewed the VA (Department of Veteran's Affairs) medical records and opined that Plaintiff was diagnosed with PTSD on September 14, 2010 which is within three months after his date last insured.  He argues that Dr. Sharpnack opined that Plaintiff struggled with PTSD symptoms since his time in the military in 1991.  He also points out that the state agency psychologists agreed that Plaintiff had a medically determinable mental impairment prior to his date last insured.

The Commissioner argues that the ALJ reasonably determined that Plaintiff did not establish the presence of medically determinable impairments prior to his date last insured.  She points out that Plaintiff's date last insured was June 30, 2010, and quotes the regulations for the proposition that a "medically determinable impairment must be established by medical evidence and 'not only by the claimant's statement of symptoms.'"  (Comm'r Br. 4, n.4) (quoting 20 C.F.R. § 404.1508) (brackets omitted).  She notes the ALJ's finding that the record contained very little medical evidence regarding the period before Plaintiff's date last insured, and argues that it contains only two treatment notes from that period, one from February 2005, and one from July 2008.  Id.  She points out that Dr. Sharpnack's letter identified a diagnosis of PTSD three months after Plaintiff's date last insured, and that although Dr. Sharpnack stated Plaintiff had been struggling with PTSD symptoms since 1991, the ALJ had found that "there were simply 'no medical signs or laboratory findings to substantiate the existence of a medically determinable impairment through the date last insured.'" (Com'r Br. 5) (quoting R. 17).  She recognized in a footnote that the ALJ gave no weight to Dr. Cohen's

5

opinion that a medically determinable impairment was established before the date last insured, but argues that the ALJ relied on the state agency doctors in concluding that the record evidence did not establish any medically determinable impairment.  Id. at 5-6, and n.8.  She concludes her argument by noting that it was Plaintiff's burden to present evidence showing a medically determinable impairment before June 30, 2010, and that the ALJ reasonably concluded Plaintiff had not met his burden.

A.  **The ALJ's Findings**

The ALJ recognized that Plaintiff was found disabled based on his SSI application "primarily due to mental issues."  (R. 14).  In applying step two of the sequential evaluation process with regard to his DIB application, the ALJ found that the record evidence contained "no medical signs or laboratory findings to substantiate the existence of a medically determinable impairment."  (R. 16).  He stated:

> An "impairment" must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques.  Although the regulations provide that the existence of a medically determinable physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, the regulations further provide that under no circumstances may the existence of impairment be established on the basis of symptoms alone.

(R. 16).  The ALJ cited Social Security Ruling (SSR) 96-4p for the proposition that symptoms alone do not constitute medically determinable impairments, and that where "there are no medical signs or laboratory findings to substantiate the existence of a

medically determinable physical or mental impairment, the individual must be found not disabled at step 2 of the sequential evaluation process." (R. 17).

The ALJ noted the dearth of medical evidence in the record relating to the period before Plaintiff's date last insured, and found that the evidence does "not contain any diagnoses prior to the date last insured." Id. He found that "the medical evidence of record from the period under consideration does not establish that [sic] presence of a medically determinable impairment." Id.

The ALJ quoted Dr. Cohen's opinion, stated while reviewing the DIB application, that "while an MDI is established prior to the DLI, information is not sufficient for a determination," and the ALJ gave "no weight to this statement," because of his earlier findings that the record contained very little medical evidence for the period before the date last insured, and that the evidence did not establish a medically determinable mental impairment. Id. (quoting Ex. 1A, p.7 (R. 49)). He concluded that "there were no medical signs or laboratory findings to substantiate the existence of a medically determinable impairment through the date last insured." Id.

## B.     Standard for Evaluating Severity at Step Two of the Evaluation Process

At step two it is Plaintiff's burden to show that he had a severe medically determinable impairment before his date last insured. 20 C.F.R. § 404.1520(a)(4)(ii). The determination at step two is based on medical factors alone, and not vocational factors such as age, education, or work experience. Williamson v. Barnhart, 350 F.3d

1097, 1100 (10th Cir. 2003).  A claimant must provide medical evidence that he had an impairment and how severe it was during the time he alleges he was disabled.  20 C.F.R. § 404.1512(c).  As the regulations note, "[i]f you do not have a severe <u>medically determinable</u> physical or mental impairment . . . we will find that you are not disabled."  <u>Id.</u> § 404.1520(c) (emphasis added).

A claimant must show a physical or mental impairment resulting from "anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques."  20 C.F.R. § 404.1508.  This "impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings," but not by a claimant's statement of symptoms alone.  <u>Id.</u>  The regulations define signs, symptoms, and laboratory findings.  <u>Id.</u> 404.1528.  Symptoms are an individual's "description of [his] physical and mental impairment," but the individual's descriptions by themselves "are not enough to establish that there is a physical or mental impairment."  <u>Id.</u> at (a) ("Your statements alone are not enough to establish that there is a physical or mental impairment.").  Signs are "anatomical, physiological, or psychological abnormalities which can be observed apart from [the individual's] statements (symptoms)," and they "must be shown by medically acceptable clinical diagnostic techniques.  Psychiatric signs are medically demonstrable phenomena that indicate specific psychological abnormalities," and "must also be shown by observable facts that can be medically described and evaluated."  <u>Id.</u> at (b).  Laboratory findings are "anatomical, physiological, or psychological phenomena which

8

can be shown by the use of medically acceptable laboratory diagnostic techniques," including psychological tests.  Id. at (c).

###   C.   Analysis

Here, the ALJ determined that Plaintiff failed his burden at step two to establish the presence of PTSD as a medically determinable impairment before June 30, 2010 because the record medical evidence does not contain a medical diagnosis of PTSD before that date, and contains no evidence (other than Plaintiff's statement of symptoms) to establish the presence of that impairment before June 30, 2010.  He determined that there "were no medical signs or laboratory findings to substantiate the existence of [PTSD as] a medically determinable impairment through the date last insured."  (R. 17).

He made this determination despite the facts that the state agency reviewing psychologists, Dr. Cohen opined, and Dr. Witt affirmed that Plaintiff had provided evidence which established PTSD as a medically determinable impairment before that date.  (R. 49, 57-58, 72).  The determination was in spite of the opinion of Dr. Sharpnack, a treating psychologist at the VA, who reviewed the VA records and wrote a "To Whom It May Concern" letter on May 3, 2012, noting that Plaintiff was diagnosed with PTSD on September 14, 2010 and that he had "been struggling with PTSD symptoms since returning from Operation Desert Storm/Shield since 1991."  (R. 512).

The ALJ did not discuss Dr. Sharpnack's letter opinion, but explained that he gave no weight to the state agency psychologists' opinions because the record contained "very little medical evidence from the period prior to the date last insured," and because the

ALJ had determined that the medical evidence from that period does "not establish the presence of a medically determinable mental impairment." The problem with the ALJ's second reason for discounting the medical opinions is that he provides no authority for the proposition that medical evidence used to establish the presence of a medically determinable impairment (especially a medically determinable mental impairment) must be from the time period for which the impairment is allegedly present. The court is aware of no such authority. And, the SSI explanation in which Plaintiff was found disabled beginning November 22, 2011 relies upon evidence from nearly 20 years before that date. It notes that Plaintiff "served in the military from 1990 to 1992 and was in Iraq during Desert Storm." (R. 57).

Moreover, it appears that the ALJ believes that the only evidence supporting a medically determinable mental impairment before June 30, 2010 is Plaintiff's statement of symptoms, for he carefully explains that symptoms alone cannot be the basis for finding a medically determinable impairment. While Plaintiff's statement of symptoms resulting from PTSD may be the only medical record evidence which was recorded contemporaneously in the period before June 30, 2010, it is not the only record medical evidence that PTSD was a medically determinable mental impairment which affected Plaintiff during that period. Were it otherwise, it is hard to imagine how Plaintiff could have been found disabled after November 22, 2011. As quoted above, that decision relied upon Plaintiff's military service in Iraq during Desert Storm nearly 20 years earlier. That

decision also relied upon the fact that the records revealed that Plaintiff had been diagnosed with PTSD by the VA in Washington state in 2010.  (R. 57-58).

Although it is not clear why, the ALJ did not discuss Dr. Sharpnack's "To Whom It May Concern" letter in his decision.  Likely it is because Dr. Sharpnack pointed out a PTSD diagnosis in September 2010 which was after Plaintiff's date last insured, and Dr. Sharpnack referred to PTSD <u>symptoms</u> since 1991.  The ALJ apparently considered the PTSD diagnosis from September, but did not discuss it because he found that the records "do not contain any medical diagnoses prior to the date last insured," and the diagnosis was after that date.  (R. 17).  Apparently the ALJ ignored the symptoms since 1991 because a medically determinable impairment may not be established on the basis of symptoms alone.

The record is replete with evidence that Plaintiff was disabled no later than November 2011 because of post traumatic stress disorder resulting from Plaintiff's military service in Iraq during Desert Shield/Storm in 1990-1991, and that Plaintiff has experienced symptoms related to PTSD ever since that time.  Yet, through some mental gymnastics the ALJ determined PTSD was not medically determinable before Plaintiff's date last insured on June 30, 2010 because the <u>only</u> evidence in the record of such impairment which was specifically related to the period before June 30, 2010 was Plaintiff's report of symptoms.  Even that mental gymnastic is not supported by the record evidence.  Dr. Sharpnack's letter relates the existence of Plaintiff's PTSD back to the period after 1991, and before June 30, 2010, Dr. Cohen's opinion, affirmed by Dr. Witt

11

specifically asserts that a medically determinable mental impairment is established by record evidence before Plaintiff's date last insured.  (R. 49, 72).

If there were simply <u>no evidence</u> other than Plaintiff's statement of symptoms that he had PTSD before his date last insured, then Plaintiff's statement of symptoms would be alone as contemplated by 20 C.F.R. § 404.1528(a) ("Your statements alone are not enough to establish that there is a physical or mental impairment."), and it would likely be appropriate to find that Plaintiff had not met his burden to establish a medically determinable impairment.  However, the regulations and SSR 96-4p do not say that symptoms may not be <u>considered</u> in determining whether a medically determinable impairment exists, they provide that where the <u>only</u> evidence of a medically determinable impairment is Plaintiff's report of symptoms, they are insufficient <u>alone</u>, no matter how genuine, sincere, or severe.

Here, even if one ignores the larger context of the entire record over time, Plaintiff's report of symptoms was not alone, it was accompanied at least by the opinions of Drs. Cohen, Witt, and Sharpnack.  The ALJ ignored Dr. Sharpnack's opinion in so far as the decision specifically reveals, and he rejected the opinions of Drs. Cohen and Witt by implying that they rested on symptoms alone, and thereby determined that the alleged impairment of PTSD rested on Plaintiff's report of symptoms alone for the period before June 30, 2010.  However, when considering the record evidence in context (as a whole), it becomes apparent that even for the period before June 30, 2010 Plaintiff had the medically determinable impairment of PTSD. And, the same signs and symptoms which

12

support a finding that Plaintiff was disabled after November 22, 2011, support the finding of PTSD as a medically determinable impairment before his date last insured.

The real question at step two in this case is whether Plaintiff's PTSD was a severe impairment within the meaning of the Act, and if so, whether it became disabling before Plaintiff's date last insured.  Because the ALJ erroneously decided that PTSD was not medically determinable in the circumstances of this case, he did not determine whether it was severe during the period before June 30, 2010, and did not continue the evaluation beyond that point.  Therefore, remand is necessary for these questions to be answered.  In the appropriate circumstances, it may be necessary for the Commissioner to infer an onset date for Plaintiff's disability.  The court will leave that determination to the Commissioner in the first instance.

**IT IS THEREFORE ORDERED** that the Commissioner's decision shall be REVERSED and that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REMANDING the case for further proceedings consistent herewith.

Dated this 29th  day of July 2015, at Kansas City, Kansas.


s:/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**

13